PAUL WAYNE BUTLER v. STATE

No. 27,037. June 16, 1954
Rehearing Denied October 20, 1954
Appellant's Second Motion for Rehearing Denied
(Without Written Opinion) November 17, 1954

*Murray J. Howze,* Monahans, for appellant.

*Wesley Dice,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The conviction is for robbery; the punishment, 5 years in the penitentiary.

This is a companion case to that of Lebron R. Fields v. State, No. 27008, (page 498, this volume).

The injured party, Julio Orozco Betancu, a 56-year-old Mexican farm laborer whose wife and eight children resided in the State of Chihuahua, Mexico, was alone in the field of his employer Paul Ivey preparing an irrigation canal, when appellant and his two companions drove up, called him to the car and asked if he had any gasoline. He replied that there was some at the ranch but he had none there and returned to his work.

He was again called and when he returned to the car, the hood was raised and one of the three, other than appellant, was out of the car. Appellant and the third party were still in the car.

The opinion in the Fields case describes the assault made upon the victim.

Betancu testified that while he was down, with the knife at his throat, appellant and the other occupant of the car got out and appellant had his hand on Betancu, was holding him by the hand and went through his pockets, as did the other occupant of the car.

Betancu further testified that a package of cigarettes and a Mexican coin were taken from him by the assault and exhibition of the knife or dagger, but he was unable to say which of the parties took either item from his pockets.

Many of the same questions raised in the Fields case were raised on this trial. They were disposed of there and need not be further mentioned here.

Appellant did not testify, but his confession was offered by the state. The only serious question relates to the admission of parts of the confession relating to and tending to show that appellant and his companions committed other assaults and robberies on the day in question.

The state, having first offered only a portion of the confession, was thereafter permitted to offer the whole.

The confession, omitting the warning clause and signatures, follows, the portions which were objected to as showing collateral offenses being underlined.

"My name is Paul Wayne Butler and I am 18 years of age; I was born in Cedar Grove, Okla. and at present I consider the following address my home Box 243, Munday, Texas.

"I came to Pecos Monday, October 12, 1953. I arrived Pecos about 8 P.M.

"I hitch-hiked to Pecos, and after I got in I ate supper, called a taxi to take me up to my apt where I stay with Cleborn Fields. Cleborn and I left just as soon as I got to the apt. and went to

Verhalen Gin — where we spent the night, Leborn was working last night and Cleborn went to work this morning at Seven A.M. Leborn, Eugene Embry, and I came back to Pecos. We left Verhalen about 7 A.M. We were in the wine colored Ford of Leborn Fields.

"When we got to Pecos, Embry suggested we go out and beat the hell out of some Mexicans — Embry said that he had beat hell out of several and got some money from them. Said something about easy money if you don't get caught. This morning was the first I have heard about any thing like that. P.W.B.

"I have worked at Verhalen a month — I have known the Fields boys about 8 or 10 years, and have known Embry for about a month.

"I don't think Cleborn has been in on any of the robbing and beating, but Leborn and Embry and Gene Pace have been involved in several beating and robbing forays according to what conversation I have overheard in the last month.

"This morning between 7:30 A.M. and 8 A.M. Embry, Lebron, and I drove west of Pecos on US 80 *and picked up a Mexican about 25 years old, drove on west about 2 miles, turned left twice and stopped in a cotton field where we got out of the car and Lebron hit the Mexican but did not knock him down, so I hit him one time and knocked him down. We searched the Mexican and one of the boys got* 50c. We turned the car around and drove back to highway 17 and about 3 miles south we found a Mexican working in the field on the west side of the highway. We drove out to where he was working — looked like he was picking up rocks — We killed the motor raised the hood, and as the Mexican was looking at the motor — Fields and Embry told me to hit him. I hit him one time and he fell down. Eugene put a hunting knife at the Mex throat and Embry and Fields searched him, but we didn't get any thing.

*"Embry used the knife on all three men.*

*"We left the second man in the field and drove on out to the highway turned left and drove north a mile and a half — turned around and drove back south to where a Mex was trying to catch a ride about even with the Drivein Show.*

*"The Mex got in the car thinking we would take him where he was going — Embry told him something in Mex — I suppose*

*to get him in — then we drove on south to a paved road west. We stopped on the paved road and the Mex started fighting — Embry had told him what we were going to do. When we stopped I looked in the back seat and the Mex had a file out and Embry had a knife. The Mex tried to hit Embry with the file, I don't think Embry tried to cut the Mex. I hit the Mex two or three times in the car and we drove on down in the field next to the railroad. Fields and Embry worked the Mex over while I was driving. When we got to the railroad Embry and Fields dragged him out of the car and I hit him again. They searched him while I was trying to get them to come on and go.*

"They told me they got some small change and a watch. They put the watch in the glove compartment and we came on to Pecos. We got back in Pecos about 10 A.M.

"We took Embry home and Fields and I went to our apt. Fields went to sleep and I went to town to sell my car.

"This is the first time I have ever done anything or been arrested.

"I have a medical discharge from the Marine Corps where I served four months as a volunteer.

"I don't know any more about any of this subject, and would tell if I did.

"I have told the truth because I realize that lying is of no good."

It is appellant's contention that since he had not testified and had offered no testimony, portions of the confession relating to other offenses were inadmissible.

In other words, appellant insists that the underlined portions of the confession were inadmissible and prejudicial and offended against the rule that one accused of crime is to be tried for that offense alone, whereas the state contends that the evidence was admissible under the exceptions to the rule where the extraneous crime is a part of the res gestae, or tends to show intent or identity where intent or identity is an issue, or tends to connect the defendant with the offense for which he is on trial.

The rule appears to be that if the state's testimony leaves no question as to the intent or identity of the defendant, the exception does not apply. Branch's Ann. P.C. p. 99, Sec. 166.

As stated, the victim was unable to identify appellant as having taken his cigarettes or his Mexican coin, and did not testify that appellant assaulted him. Appellant, in his confession, said he struck the Mexican and the others searched him but "didn't get anything."

The existence of the issue of identity in the case was asserted by appellant in his exception to the charge and in his motion for new trial, even though the complained of portions of the confession were in evidence.

Paragraph 34 of his motion for new trial asserts that "the evidence raised the issue as to a mistaken identity."

Also, even with the entire confession in evidence, appellant urged in the trial court and urges here that "there is a serious question from the evidence in this case as to whether or not the assault was made upon Betancu, the injured party, with intent to rob."

The confession of appellant shows that one of his companions suggested that they "go out and beat hell out of some Mexicans"; said he had previously done so and had got some money from them.

They got in appellant's car and soon found their first victim, assaulted him and one of their number got fifty cents as a result of searching him. They drove some three miles before locating Betancu, and after robbing him of his cigarettes and small Mexican coin they drove a short distance before locating a third victim on the highway, who was likewise assaulted by the trio.

According to the confession, Embry, the third passenger in the car, "used the knife on all three men."

Under the facts here the three assaults were in pursuance of a conspiracy to assault and rob "some Mexicans," none of whom were known to the conspirators, and each offense formed a part of the conspiracy.

The jury, in passing upon appellant's guilt on the charge of robbing the second of these laborers and in determining the intent with which he acted, was entitled to know the facts of the entire enterprise which consumed only a few hours at most, though three different victims were assaulted.

But if we be mistaken in holding that the entire confession was admissible under the rule stated, it is not clear just how appellant was injured by its admission.

If without the complained of portions of the confession there was no question of the identity of appellant as one of the persons who assaulted Betancu, inflicted violence upon him and placed him in fear by exhibiting a dagger, a deadly weapon, and took his property from him, and if there was left no question that robbery was the motive and intent of appellant in joining in the assault, he having received the lowest penalty that the law affixes for such offense, appellant is in no position to complain.

We find the evidence sufficient to sustain the conviction and observe no reversible error.

The judgment is affirmed.

### ON MOTION FOR REHEARING

MORRISON, Judge.

In a forceful motion and in argument, appellant's able attorney has reasserted his contention that, because aggravated assault is a lesser and included offense to the offense of robbery and was the offense charged in one count of the indictment, the jury should have been charged that they might find the accused guilty of aggravated assault. Appellant contends that Stevens v. State, 138 Texas Cr. Rep. 59, 134 S.W. 2d 246, supports such view of the law. With this contention we cannot agree. It should be noted that in the Stevens case we said, "In fact, a reading of the record would justify a serious doubt as to the correctness of her belief that there was penetration." Of course, if there was no penetration, the offense would be assault with intent or attempt to rape rather than the offense of rape. Applying the test in the Stevens case to the case at bar, can we say that a reading of the record would justify a serious doubt as to the correctness of Betancu's testimony that he had been robbed as well as assaulted? We think not.

Appellant's motion for rehearing is overruled.